IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VERNON DOUGLAS, a/k/a Leverne | : | CIVIL ACTION NO. **1:CV-08-0140** |
| Douglas, a/k/a Spider, | : | |
| | : | |
| | : | |
| Plaintiff | : | (Judge Rambo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| UNITED STATES BUREAU OF PRISONS, | : | |
| et al., | : | |
| | : | |
| Defendants | : | |

**REPORT AND RECOMMENDATION**

**I. Background.**

On January 23, 2008, Plaintiff, Vernon Douglas, while an inmate at the United States Penitentiary Allenwood, White Deer, Pennsylvania ("USP-Allenwood"),[1] filed this civil rights action, *pro se*, pursuant to 28 U.S.C. § 1331.  Plaintiff named five Defendants employed by the United States Bureau of Prisons  ("BOP").[2]   Plaintiff also filed a Motion for Leave to Proceed *in forma pauperis*. (Doc. 2).

On February 13, 2008, after conducting our initial screening of Plaintiff's original Complaint pursuant to the Prison Litigation Reform Act, we issued a Report and Recommendation ("R&R") recommending that this case be dismissed as against all Defendants. (Doc. 8).  On February 29, 2008, the District Court issued a Memorandum and Order adopting

---

[1]Plaintiff is currently confined at USP-Allenwood.  (Doc. 43).

[2]Venue in this Court is proper with respect to this § 1331 civil rights action since the incidents in question occurred at USP-Allenwood.

our Report and Recommendation. (Doc. 12).  On March 10, 2008, Plaintiff filed a Motion for

Reconsideration of the District Court's February 29, 2008 Order, and a Request to Amend his

Complaint. (Doc. 13).  The District Court denied Plaintiff's Motion and Request by Order dated

March 11, 2008. (Doc. 14).

On March 25, 2008, Plaintiff filed an Appeal of the District Court's February 29,

2008 Memorandum and Order to the United States Court of Appeals for the Third Circuit.

(Doc. 18).  On September 17, 2008, the Court of Appeals issued its Mandate affirming in part

and vacating in part the March 11, 2008 Judgment of the District Court. (Doc. 22).  *See Douglas*

*v. U.S.*, 285 Fed. Appx. 955, 2008 WL 2805639 (3d Cir. 2008)(Per Curiam).[3]

On September 17, 2008, the District Court entered an Order reopening Plaintiff's

case and directing Plaintiff to file an amended complaint no later than October 1, 2008.  (Doc.

23, p. 1, ¶ 2).  The District Court's Order further advised Plaintiff that his failure to timely file his

amended complaint would result in dismissal of this action. (Doc. 23, p. 2, ¶ 3).

The time in which Plaintiff was to have filed his amended complaint expired.  Plaintiff

neither filed his amended complaint nor requested an extension of time in which to do so.

---

[3]The Third Circuit affirmed the Court's dismissal of Plaintiff's *Bivens* claim against the Defendant BOP.  The Third Circuit also found that Plaintiff should have been allowed to amend his complaint regarding his claim that the BOP Defendants refused to refund his money deducted from his inmate account to pay a felony assessment, since his sentence was vacated and his sentence at the time did not include a fine or special assessment.

On October 9, 2008, we issued a R&R and recommended that this action be dismissed on the basis of Plaintiff's failure to timely file his amended complaint and for his failure to comply with the September 17, 2008 Order of the Court. (Doc. 25).

On January 21, 2009, the Court issued an order dismissing Plaintiff's action due to his failure to timely file his amended complaint even after he was given four extensions of time over four months to file it.  (Doc. 37).

On February 6, 2009, Plaintiff filed a Motion for Reconsideration of the Court's January 21, 2009 Order, and claimed he did not receive the Court's December 19, 2008 Order which gave him his last extension of time to file his amended pleading.  (Doc. 39).   On February 13, 2009, the Court granted Plaintiff's Motion fo Reconsideration, and directed the Clerk of Court to reopen this case.  (Doc. 40).  The Court also directed Plaintiff to file his Amended Complaint by March 2, 2009.

Plaintiff filed his Amended Complaint with attached exhibits (Exs. 1-6) on March 4, 2009.[4]   (Doc. 43).  We now screen Plaintiff's amended pleading.

**II.  PLRA.**

As stated, the Plaintiff has filed an application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.  (Doc. 2).   The Prison Litigation Reform Act of 1995,[5] (the "PLRA"),

---

[4]We note that in screening a prisoner's complaint under the PLRA, the Court can consider exhibits attached to the complaint. *Hughes v. Kostingo*, 2006 WL 367890 * 2 (W.D. Pa.).  We also note that Plaintiff's exhibits attached to his Amended Complaint were mostly the same exhibits attached to his original Complaint.

[5]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

obligates the Court to engage in a screening process when a prisoner wishes to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.[6]  Specifically, Section 1915(e)(2), which was created by § 805(a)(5) of the Act, provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

**III.  Motion to Dismiss Standard.**

The Court in *O'Connell v. Sobina*, 2008 WL 144199, *2 (W.D. Pa.), set forth the new standard to dismiss, as annunciated by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550  U.S. —, 127 S. Ct. 1955 (2007), as follows:

> As the United States Supreme Court recently held in *Bell Atlantic Corp. v. Twombly*, [550] U.S. —, 127 S.Ct. 1955, 167 L.Ed.2d 929 (May 21, 2007), a complaint must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974 (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).  The court must accept as true all all allegations of the Complaint and all reasonable factual inferences must be viewed in the light most favorable to plaintiff. *Angelastro v. Prudential-Bache Securities, Inc.*, 764 F.2d 939, 944 (3d Cir. 1985).  The Court, however, need not accept inferences

---

[6]The Plaintiff filed an application to proceed *in forma pauperis* with this Court and an authorization to have funds deducted from his prison accounts.  The court then issued an administrative order directing the warden to commence deduction of the full filing fee due the court from the Plaintiff's prison trust fund account.  (Docs. 2, 3 and 7).

drawn by plaintiff if they are unsupported by the facts as set forth in the complaint.  *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).  Nor must the court accept legal conclusions set forth as factual allegations.  *Bell Atlantic Corp.*, 127 S.Ct. at 1965 (citing *Papas an v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).  "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp.*, 127 S.Ct. at 1965.  Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." *Id* at 1974.

*See also Kokinda v. Breiner*, 557 F. Supp. 2d 581, 588 (M.D. Pa. 2008).

The Court uses the same standard to screen a complaint under the PLRA as it does for a 12(b)(6) motion to dismiss.  *See O'Connell v. Sobina*, 2008 WL 144199, *3 (W.D. Pa.).

## IV.  Allegations of Amended Complaint.

While the docket in this case and the caption to Plaintiff's Amended Complaint indicate that there is only one Defendant, namely the United States Bureau of Prisons ("BOP"), there are clearly five individual Defendants, all employees of the BOP, who are named in the amended pleading.  In fact, as stated, the Third Circuit has previously affirmed the District Court's dismissal of Plaintiff's *Bivens* claim against the BOP.  *See* 285 Fed. Appx.  Thus, insofar as Plaintiff again attempts to name the BOP as a Defendant in his Amended Complaint, this Defendant must be dismissed.  *Id.*

The five individual Defendants named in Plaintiff's Amended Complaint are: J. Kaminski, Correctional Treatment Specialist at USP-Allenwood; William H. Ey, Acting Warden at USP-Allenwood; D. Scott Dodrill, BOP Regional Director; Harrel Watts, Administrator for

BOP National Inmate Appeals; and R. Martinez, Warden at USP-Allenwood.  (Doc. 43, pp. 2

and 5).  Plaintiff states that he sues Defendants in their individual and official capacities.  (*Id.*, p.

2).[7]

Plaintiff states that his Amended Complaint is filed, in part, pursuant to 28 U.S.C.

§ 1331 against federal officials for violations of his constitutional rights and he seeks

compensatory and punitive damages as well as a declaratory judgment and injunctive relief.[8]

Plaintiff essentially claims that he was coerced by Defendant Kaminski, a Correctional Treatment

Specialist at USP-Allenwood,  to sign an Inmate Financial Responsibility Plan contract ("IFRP")

_____

[7]Plaintiff's Amended Complaint, in violation of Rule 8(a)(3), fails to contain a separate request for relief sought.  However, under his statement of jurisdiction, he indicates that he is seeking, in part, monetary damages from Defendants.  (Doc. 43, p. 1).  Plaintiff cannot seek monetary damages from Defendants in their official capacities and this claim for relief should be dismissed.

As the Court in *Breyer v. Meissner*, 23 F. Supp. 2d 540, 544 (E.D. Pa. 1998), stated:

> To the extent that the proposed claims seek monetary damages against the United States or individual defendants in their official capacities, the claims are barred by the doctrine of sovereign immunity.  *Federal Deposit Insurance Corp. v. Meyer,* 510 U.S. 471, 475, 114 S.Ct. 996, 1000, 127 L.Ed.2d 308 (1994). Plaintiff does not allege that the United States has waived its immunity in this case. Furthermore, the Supreme Court has held that a *Bivens* action may not be brought against a federal agency. *Id.* 510 U.S. at 484-86, 114 S.Ct. at 1005-06.

[8]The Third Circuit in *Banks v. Roberts*, 2007 WL 3096585, * 1, n. 1 (3d Cir. 10-19-07) (Non-Precedential) noted that "A '*Bivens* action' is a commonly used phrase for describing a judicially created remedy allowing individuals to seek damages for unconstitutional conduct by federal officials.  This constitutional tort theory was set out in *Bivens* . . . "

agreeing to make a $25.00 payment every three months towards an alleged court ordered $500 felony assessment, despite the fact that the sentencing court did not impose a fine on him or set a schedule of restitution payments.  (Doc. 43, p. 2 and Exs. 1 and 2).[9]

Specifically, Plaintiff claims that he was forced to sign the IFRP contract by Defendant Kaminski under duress, even though his May 22, 2006 Eastern District of Pennsylvania Judgment of Sentence did not impose a fine on him or set a schedule of restitution payments. (Doc. 43 and Exs. 1 and 2).   Plaintiff's May 22, 2006 Judgment of Sentence did impose a $500.00 special assessment, but did not impose a fine.  (Doc. 1, Ex. 2-B).  Plaintiff states that on March 9, 2007, Defendant Kaminski placed him in IFRP refusal status since he did not have the required balance in his account to pay his agreed upon quarterly amount.  Plaintiff states that less than 24 hours later, on March 10, 2007, his account had a balance of $64.00.  (Doc. 43, p. 3).  Plaintiff states that under BOP Policy Statement, P.S. 5580.08A, the roster for inmates placed in IFRP refusal status is to be prepared on the 16th day of each month.  Thus, Plaintiff seems to indicate that he would have had sufficient funds in his account for his quarterly payment, if Defendant Kaminski had waited until the 16th of March as he was required to do under BOP policy.

_____

[9]"Under the IFRP, federal prisoners are encouraged to meet their financial responsibilities by entering into a contractual payment schedule developed for the inmate with the assistance of BOP staff. An inmate's failure to participate in this program or to make agreed payments can affect his or her eligibility for participation in various BOP programs and may be considered for purposes of parole review." *Wilkins v. Bittenbender*, 2006 WL 860140,  * 15 (M.D. Pa. 2006).

Plaintiff states that the alleged conduct by Defendant Kaminski, *i.e.*, improperly placing him in IFRP refusal status and improperly taking money from his account, violated his due process rights since he had a liberty interest to insure the proper BOP policies and procedures were followed. (*Id.*, p. 3).[10]  In his original Complaint as well as in his Amended Complaint, Plaintiff also claims that, as a result of being placed in IFRP refusal status, restrictions were imposed on him, such as his work assignment, the wage grade for his prison job, and his access to prison programming.[11] (*Id.*, pp. 3 and 6 and Doc. 1).

Plaintiff states that on July 3, 2007, his May 2006 sentence was vacated and his case was remanded to the District Court for re-sentencing. *See U.S. v. Douglas*, 244 Fed. Appx. 411 (3d Cir. 2007).[12]  Plaintiff states that, despite his original sentence being vacated, Defendant Kaminski refused to lift the IFRP refusal restrictions imposed on him or to return his funds paid based on a vacated sentence, and that this deprived him of his liberty interest and caused him to suffer harassment and retaliation by Defendants.  Plaintiff avers that the restrictions imposed on him constituted cruel and unusual punishment. (*Id.*, p. 3).

---

[10]This Court has held that a BOP policy manual is not the basis for a constitutional claim. *See Gross v. Warden*, 2008 WL 181307, *2, n. 2 (M.D. P.a).

[11]As we previously noted, Plaintiff has no constitutional right to any particular job in the prison. *See Wright v. O'Hara*, 2002 WL 1870479, *5 (E.D. Pa.).  The Constitution does not create a property right interest in prison employment. *See Wilkins v. Bittenbender*, 2006 WL 860140, * 9 (M.D. Pa. 2006).

[12]The Third Circuit vacated Plaintiff's life imprisonment sentence for his conviction of possession of a firearm in furtherance of a drug trafficking crime  based on *U.S. v. King*, 454 F. 3d 187 (3d Cir. 2006) and *U.S. v. Colon*, 474 F. 3d 95 (3d Cir. 2007).

Plaintiff avers that on October 6, 2008, he was re-sentenced.  (*Id.*, p. 4 and Ex. 1).

Plaintiff states that in his re-sentence, the sentencing court did not impose a fine or set a

schedule of restitution payments.   Plaintiff attaches as Ex. 1 to his amended pleading a copy of

one sentence from the October 6, 2008 sentencing transcript, in which the Court stated:

> I'm sure he doesn't have $500 to pay in his prison account at this
> juncture but I am not going to be dictating how that will be
> removed at this juncture and I am not going to impose a fine so
> you should not be placed in refusal status for refusing to pay a fine,
> all right?

(Doc. 43, Ex. 1).

Thus, it appears that Plaintiff's October 6, 2008 sentence did not impose either a

$500 special assessment on him or a fine.

Plaintiff states that the imposition of sanctions against him by Defendant Kaminski for

his failure to acquiesce in the BOP's IFRP and restitution repayment schedule violated the law.

(*Id.*, p. 4).  Plaintiff also states that only the sentencing court had the authority to set the

schedule of restitution payments and that this responsibility could not be delegated to the BOP.

(*Id.*).[13]

---

[13]To the extent that Plaintiff claims that the BOP did not have authority to set the schedule of his restitution payments, he must file a petition for writ of habeas corpus under 28 U.S.C. § 2241.  *See Costigan v. Yost*, 2008 WL 5062365 (3d Cir.) (if inmate's challenge goes directly to execution of his  sentence, *i.e.* whether the BOP had the authority to schedule the restitution payments, the claim must be raised in a § 2241 habeas petition); *U.S. v. Coates*, 178 F. 3d 681, 685 (3d Cir. 1999) (under MVRA, the sentencing court cannot delegate to the BOP the authority to set the schedule of restitution payments since this constituted a judicial act). Also, under the MVRA, the sentencing court must consider the Defendant's financial resources before it sets the schedule of restitution payments. *See* 18 U.S.C. § 3664(f)(2); *U.S. v. Corley*, 500 F. 3d 210 (3d Cir. 2007).

Plaintiff also claims that the supervisory Defendants Ey, Dodrill, Watts and Martinez are liable with respect to their responses to his grievances they sent him after his original sentence was vacated by the Third Circuit.  Plaintiff states that the supervisory Defendants are liable since they failed to remedy his grievances, and that they violated his "First Amendment rights to freedom of speech by retaliating against [him] for making oral complaints and for [filing] grievances [relating] to the wrongful acts of the BOP staff."  (*Id.*, pp. 5-6).

Plaintiff concludes as follows:

> The Defendants knowingly intentionally and deliberately
> violated Plaintiff's Eight and 14 Amendment right to be free
> of cruel and unusual punishment, by remaining deliberately
> indifferent to his liberty interest as to this date Plaintiff's
> privileges are still restricted, work assignment wage grade
> and programming.

(*Id.*, p. 6).

Plaintiff attaches as exhibits (Exs. 3-6) to his Amended Complaint responses of supervisory Defendants Ey, Dodrill, Watts and Martinez to grievances he filed.  Plaintiff alleges that the supervisory officials are Defendants because they did not properly investigate his complaints even after his sentence was vacated and denied his grievances.  (*Id.* and Exs. 3-5).

---

We also note that Plaintiff's own exhibits show that his original Judgment and Commitment ("J&C"), which was later vacated, required him to pay a $500 felony assessment, with the balance due immediately.  Defendant Kaminski then prepared an IFRP plan for Plaintiff to make $25 quarterly payments toward the felony assessment.  There is no exhibit of Plaintiff which shows that any Defendant or the BOP set a schedule for Plaintiff to repay any restitution. Thus, insofar as Plaintiff claims that Defendants improperly set a schedule of restitution payments for him, Plaintiff seems to be mistaken.  Plaintiff is referring to the IFRP plan which set a payment schedule for his $500 felony assessment (not a restitution payment schedule) imposed by his original J&C.

As in the original pleading, Defendant Martinez is again named as a Defendant in the amended pleading, but Martinez's November 30, 2007 response to Plaintiff's grievance attached as Ex. 6 (Doc. 43) and Plaintiff's December 28, 2007 reply to Martinez (Doc. 43, Ex. D) did not relate to Plaintiff's present claims.  Ey and Dodrill are again named as Defendants because they allegedly failed to properly investigate Plaintiff's complaints and denied his grievance appeals on September 18, 2007 and November 5, 2007.  (*Id.*  Exs. 3-4).  Watts is again named as a Defendant since he also allegedly ignored Plaintiff's problem and denied his grievance final appeal on October 18, 2007.  (*Id.*, Ex. 5).

Plaintiff's exhibits show that the relevant grievance responses of supervisory Defendants Ey, Dodrill, and Watts[14] were dated after the Third Circuit vacated his original sentence (July 3, 2007) and before the sentencing court re-sentenced him (October 6, 2008). The grievances responses of supervisory Defendants Ey, Dodrill, and Watts essentially stated that the sentencing court in its (original) J&C ordered Plaintiff to pay a $500 felony assessment with the balance due immediately and that he signed the IFRP contract in which he agreed to pay $25.00 every three months.  The responses also stated that since Plaintiff did not have the required minium balance in his account to make his quarterly payment, he was placed in IFRP refuse status until he made a payment toward his felony assessment.

---

[14]As stated, the grievance response of Defendant Martinez does not relate to Plaintiff's present claims.

**VI.  Discussion.**

Plaintiff states that by making him participate in the IFRP and by deducting money from his inmate account even though he was not ordered to pay a "fine" and no "schedule of restitution payments" was set, Defendants violated his constitutional right to due process. Plaintiff claims that Defendant Kaminski wrongfully placed him in the IFRP and deducted his money, which was an abuse of process, and that the supervisory Defendants are liable for ignoring the problem and not stopping the abuse of process.

Initially, to the extent that Plaintiff claims Defendants forced him to agree to pay his $500 felony assessment imposed by the sentencing court in the original J&C dated March 22, 2006, and that Defendants improperly set a schedule for him to pay his felony assessment (*i.e.* $25.00 quarterly), the sentencing court does not have to set a schedule to pay the special assessment.  As stated, Plaintiff appears to confuse the setting of a schedule to pay a felony special assessment with the setting of a "schedule of restitution payments" by the BOP.

In *Costigan*, the Court stated:

> [inmate's] claim is based exclusively on the sentencing court's failure to set a schedule for paying the $200 special assessment. The special assessment was mandatory under 18 U.S.C. § 3013(a)(2)(A), and was to be "collected in the manner that fines are collected in criminal cases." 18 U.S.C. § 3013(b). The Attorney General is responsible for the collection of criminal fines. *See* 18 U.S.C. § 3612(c). The time and method of payment is governed by 18 U.S.C. § 3572(d), which provides that [a] person sentenced to pay a fine or other monetary penalty, including restitution, shall make such payment immediately, unless ... the court provides for payment on a date certain or in installments. **But, unlike with restitution, there is no provision mandating that the order for a fine or special assessment include a payment schedule in consideration of the defendant's economic circumstances. Therefore, because the sentencing court was not required to set a payment schedule for the special assessment**, we will affirm

the District Court's order denying Costigan's § 2241 petition.

2008 WL 5062365, *2(emphasis added).

Thus, insofar as Plaintiff claims that Defendants improperly set a payment schedule for the $500 felony assessment imposed by the sentencing court in the original J&C dated March 22, 2006, we find no merit to this claim.

Plaintiff asserts a Fifth Amendment due process claim, an Eighth Amendment cruel and unusual punishment claim, as well as a First Amendment retaliation claim.  We find that Plaintiff has failed to state an Fifth Amendment due process claim and a First Amendment retaliation claim against the supervisory Defendants.  We also find that Plaintiff has not stated an Eighth Amendment cruel and unusual punishment claim against any Defendant.

First, we discuss Plaintiff's claims against the supervisory Defendants.

1.     *Supervisory Defendants Warden Martinez, Acting Warden Ey,*
       *BOP Regional Director Dodrill and BOP Administrator Watts*

The Plaintiff's allegations against the supervisory prison officials, namely Warden Martinez, Acting Warden Ey, BOP Regional Director Dodrill and BOP Administrator Watts, are that they did not properly respond  to his grievance appeals regarding Defendant Kaminski's determination that he should participate in the IFRP and Defendant Kaminski's placement of him in IFRP refuse status when his account lacked sufficient funds to ensure his $25 quarterly payment was in his account.  Plaintiff avers that the supervisory Defendants rendered their responses to his  grievance appeals after his original sentence, which imposed the $500 felony assessment, was vacated by the Third Circuit.  Plaintiff's exhibits show that the relevant grievance appeal responses of supervisory Defendants Ey, Watts and Dodrill were dated after

13

the Third Circuit vacated Plaintiff's original sentence, *i.e.* July 3, 2007, and before Plaintiff was

re-sentenced, *i.e.* on October 6, 2008.  Plaintiff claims that supervisory Defendants retaliated

against him, in violation of his First Amendment rights, due to his oral complaints and the

grievances he filed against BOP staff, and he claims that their conduct amounted to cruel and

unusual punishment in violation of the Eighth Amendment since his prison privileges (work

assignment, wage grade, and access to prison programming) were restricted (and still are) after

he was placed in IFRP refusal status.  (Doc. 43, pp. 5-6).

Further, Plaintiff does not allege that any supervisory Defendant placed him in the

IFRP or that they personally had his money deducted from his account at the prison.  Rather, he

alleges that the supervisory Defendants did not properly investigate his problem *via* their

responses to his grievances even though his original sentence was vacated.[15]

As stated above, Plaintiff's own exhibits show that the grievance appeal response of

Defendant Martinez had nothing to do with Plaintiff's present claims.  (Doc. 43, Ex. 6 and Ex.

D).   Thus, we will recommend that Defendant Martinez be dismissed entirely from this case

since he did not have any personal involvement with Plaintiff's present claims.  Further,

*respondeat superior* is not an acceptable basis to hold prison officials liable in a civil rights

action.  *See Sutton v. Rasheed*, 323 F.3d 236, 249-250 (3d Cir. 2003).

---

[15]As stated above, the relevant responses to Plaintiff's grievance appeals by
supervisory Defendants Ey, Watts and Dodrill were dated after Plaintiff's original sentence was
vacated and before his new sentence was imposed.  (Doc. 43, Exs. 3-5).

14

Additionally, we do not find that Plaintiff has stated a cognizable First Amendment retaliation claim and an Eighth Amendment cruel and unusual punishment claim against the supervisory Defendants.

The *O'Connell* Court stated:

> [M]erely alleging the fact of retaliation is insufficient; in order to prevail on a retaliation claim, a plaintiff must show three things: (1) the conduct which led to the alleged retaliation was constitutionally protected; (2) that he was subjected to adverse actions by a state actor (here, the prison officials); and (3) the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action. *see Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Anderson v. Davila*, 125 F.3d 148, 163 (3d Cir. 1997).

> If the plaintiff proves these three elements, the burden shifts to the state actor to prove that it would have taken the same action without the unconstitutional factors. *Mt. Healthy*, 429 U.S. at 287. "This means that, once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334. Because retaliation claims can be easily fabricated, district courts must review prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a prisoner. *See Cochran v. Morris,* 73 F.3d 1310, 1317 (4th Cir. 1996); *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995);, *cert. denied*, 516 U.S. 1084, 116 S.Ct. 800, 133 L .Ed.2d 747 (1996); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

2008 WL 144199, *11; *Fortune v. Basemore*, 2008 WL 4525373, *4-*5 (W. D. Pa.)("It is well settled that retaliation for the exercise of a constitutionally protected right is itself a violation of rights secured by the Constitution.").

Plaintiff alleges that he engaged in constitutionally-protected conduct when he made oral complaints and filed his grievances against prison staff.   He alleges that supervisory Defendants retaliated against him by failing to remedy his grievance appeals based on his oral complaints and grievances he filed against prison staff.   "A prisoner's ability to file grievances and lawsuits against prison officials is a constitutionally-protected activity for purposes of a retaliation claim". *Id*., *5(citations omitted).

Plaintiff must also allege that he was subjected to adverse actions by supervisory Defendants.   Plaintiff alleges that as a result of Defendant Kaminski's decision to place him in IFRP refuse status, restrictions were placed on his prison privileges.   Plaintiff does not alleged that supervisory Defendants were involved in the imposition of the restrictions placed on him. Rather, Plaintiff's own exhibits show that supervisory Defendants Ey, Watts and Dodrill found only that he was properly placed in the IFRP refuse status by Defendant Kaminski.   As indicated, the restrictions imposed on Plaintiff were the result of Defendant Kaminski's decision to place him in IFRP refuse status.   Plaintiff does not allege that the supervisory Defendants were personally involved in the imposition of the restrictions or that they were personally involved in refusing to lift  the restrictions on Plaintiff after his original sentence was vacated and he was re-sentenced, well after the grievance appeal responses of Defendants Ey, Watts and Dodrill.

Thus, we find that Plaintiff has not stated allegations as against supervisory Defendants Ey, Watts and Dodrill sufficient to go forward with respect to his First Amendment retaliation claim against them.

Moreover, to the extent that Plaintiff claims that the supervisory Defendants did not properly investigate (*vis-a-vis* the Third Circuit's Order vacating his original sentence) and correctly respond to his grievance appeals by removing him from the IFRP and the IFRP refuse status, these allegations do not amount to a Fifth Amendment due process violation.

As stated, Defendant Warden Martinez did not even respond to Plaintiff's relevant grievance appeal concerning his claims in this case.  Further, the other supervisory Defendants, Acting Warden Ey, BOP Regional Director Dodrill and BOP Administrator Watts, are not alleged to have coerced Plaintiff to sign the IFRP contract, and they did not take any money from his account.  These Defendants are not alleged to have placed Plaintiff in IFRP refusal status.  Thus, as stated, Plaintiff does not allege that any of these Defendants were personally involved in the decision to have him placed in the IFRP program, to have him placed in the IFRP refuse status and, he does not claim that they were  personally involved in deducting any money from his account at the prison (either before his original sentence was vacated or after) as part of the IFRP.

Plaintiff indicates that, through his BOP administrative remedy process, he informed Defendants Warden Martinez, Acting Warden Ey, BOP Regional Director Dodrill and BOP Administrator Watts that he was the subject of an abuse of process  at the prison by improperly placing him in the IFRP despite the fact that he had no fine imposed in his original Judgment

17

and Commitment, and that these Defendants improperly denied his grievance appeals.

Defendants Acting Warden Ey, BOP Regional Director Dodrill and BOP Administrator Watts are not alleged to have been aware of any improper IFRP deduction at the prison since they based their grievance appeal decisions on Plaintiff's original Judgment and Commitment which imposed a felony assessment on him.  In fact, as stated, the responses of Defendants Acting  Warden Ey, BOP Regional Director Dodrill and BOP Administrator Watts to Plaintiff's administrative remedy appeals advised him of his $500 special assessment obligation in his original sentence, and advised him that he signed the IFRP contract.  (Doc. 43, Exs. 3-5). There is no indication in the responses of these Defendants that they were aware Plaintiff's original sentence was vacated by the Third Circuit on July 3, 2007, and Plaintiff does not allege that they were aware of this.  (Doc. 43, p. 5).

Further, the denial by the supervisory Defendants of Plaintiff's grievance appeals does not state a constitutional claim.

The law is well-settled that there is no constitutional right to a grievance procedure. *See Jones v. North Carolina Prisoners' Labor Union, Inc.*  433 U.S. 119, 137-138 (1977).  This very Court has also recognized that grievance procedures are not constitutionally mandated. *See Chimenti v. Kimber*, Civil No. 3:CV-01-0273, slip op. at p. 18 n. 8 (March 15, 2002) (Vanaskie, C.J.), reversed in part, C.A. No. 03-2056 (3d Cir. June 8, 2005)(Non-Precedential). Even if the prison provides for a grievance procedure, as the BOP  does, violations of those procedures do not amount to a civil rights cause of action.  *Mann v. Adams*, 855 F. 2d 639, 640 (9th Cir 1988), *cert denied*, 488 U.S. 898 (1988); *Hoover v. Watson*, 886 F. Supp. 410, 418 (D.

Del. 1995), aff'd 74 F. 3d 1226 (3d Cir. 1995).  *See also Burnside v. Moser*, Civil No. 04-2485, 12-16-04 Order, p. 3, J. Muir, M.D. Pa. (Even "[i]f the state elects to provide a grievance mechanism, violations of its procedures do not ... give rise to a [constitutional] claim.") (citations omitted).  Thus, even if the prison official allegedly failed to process the prisoner's grievances, no constitutional claim is stated.  *Burnside, supra.*

The Court stated in *O'Connell v. Sobina*, 2008 WL 144199, * 17 (W.D. Pa):

> Plaintiff also asserts due process claims against Defendants, based on their denials of his grievances.  It is well established that inmate grievance procedures, in themselves, do not confer a liberty interest protected by the Due Process Clause.  *McGuire v. Forr*, 1996 WL 131130 (E.D. Pa. Mar. 21, 1996), *aff'd* 101 F.3d 691 (3d Cir. 1996); *Leavitt v. Allen*, 46 F.3d 1114 (Table), 1995 WL 44530 (1st Cir. Feb. 3, 1995).  Furthermore, prison regulations that establish a grievance procedure cannot give rise to a liberty interest because they confer only procedural protections, not substantive rights, upon the inmates who may use the grievance procedures.  *See Antonelli v. Sheahan*, 81 F.3D 1422, 1430 ( 7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.), *cert. denied*, 488 U.S. 898, 109 S.Ct. 242, 102 L.Ed.2d 231 (1988); *Wilson v. Horn*, 971 F.Supp. 943, 947-48 (E.D. Pa. 1997), *aff'd.* 142 F.3d 430 (3d Cir. 1998).  Accordingly, Plaintiff's allegations that Defendants failed to properly investigate, process, and/or consider his grievances do not state a claim upon which relief may be granted under 42 U.S.C. § 1983, *Burnside v. Moser*, 138 Fed. Appx. 414, 416 (3d Cir. 2005).

Additionally, we do not find that Plaintiff states an Eighth Amendment cruel and unusual punishment claim against Defendant Kaminski or the supervisory Defendants.  Plaintiff states that due to his improper placement into the IFRP refuse status by Defendant Kaminski after his original sentence was vacated, restrictions were placed on some of his privileges and that they were never lifted.  Plaintiff avers that this amounted to cruel and unusual punishment in violation of the Eighth Amendment.

Courts have addressed what types of prisoner's claims amount to an Eighth

Amendment violation.  The Court in *Dantzler v. Beard*, 2007 WL 5018184, *11  (W.D. Pa.),

stated:

> The Third Circuit has cautioned that "not every governmental
> action affecting the interests or well-being of a prisoner is subject to
> Eighth Amendment scrutiny." *Fuentes v. Wagner*, 206 F.3d  335,
> 344 (3d. Cir.2000), *cert denied*, (quoting *Whitley v. Albers*, 475
> U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (internal
> quotes omitted).  In determining whether a harm was "sufficiently
> serious to fall within the Eighth Amendment's zone of protections,
> *Fuentes v. Wagner*, 206 F.3d at 344, the Third Circuit has described
> the inquiry as whether the prisoner has been deprived of the
> "minimal civilized measure of life's necessities." *Young v, Quinlan*,
> 960 F.2d 351, 359 (3d Cir.1992), *superseded by statute on other
> grounds*, (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 101
> S.Ct. 2391, 69 L.Ed.2d 59 (1981)).  Proving that one has been
> deprived of the minimal civilized measure of life's necessities
> requires proof that one has been denied "basic human needs, such
> as food, clothing, shelter, sanitation, medical care and personal
> safety" from physical assault. *Griffin v. Vaughn*, 112 F.3d at 709.

In *Brown v. Martinez*, 2007 WL 2225842, *6 (M.D. Pa.), the Court stated:

> "In addition to showing conditions that pose significant risk of
> serious harm, the inmate must show that the person or persons
> responsible for the conditions of confinement acted with "a sufficiently
> culpable state of mind." *Wilson*, 501 U.S. at 298.  As described b y
> the Supreme Court in *Farmer*, the standard for determining deliberate
> indifference in a conditions of confinement case is whether a prison
> official knew of and disregarded an excessive risk to an inmate's
> health or safety. *Farmer*, 511 U.S. at 837.  The Court added that "it is
> enough that the official acted or failed to act despite his knowledge
> of a substantial risk of harm." *Id*. at 842."

In *Padilla v. Beard*, 206 Fed. Appx. 123, 125 (3d Cir. 2006), the Court stated:

> In order for prison conditions to violate the Eighth Amendment, the
> conditions "must ... involve the wanton and unnecessary infliction of pain,

> [or] be grossly disproportionate to the severity of the crime warranting imprisonment." *Peterkin v. Jeffes,* 855 F.2d 1021, 1023 (3d Cir.1988) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)). A prisoner alleging a violation of the Eighth Amendment must demonstrate both (i) an objectively serious deprivation and (ii) deliberate indifference by the prison official defendant in effecting the deprivation. *See Wilson v. Seiter,* 501 U.S. 294, 298-99, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *Griffin v. Vaughn,* 112 F.3d 703, 709 (3d Cir.1997). "It is clear that a prisoner's claim under the Eighth Amendment must establish more egregious conduct than that adequate to support a tort at common law." *Williams v. Mussomelli,* 722 F.2d 1130, 1134 (3d Cir.1983). The loss of privileges asserted of by Padilla is clearly insufficient to rise to this level. *See Inmates of Occoquan v. Barry,* 844 F.2d 828, 836 (D.C.Cir.1988)("[C]ertain "deprivations," such as limited work and educational opportunities, do not even fall within the broad compass of punishments" within the meaning of the Constitution.").

*See also Perez v. BOP*, 229 Fed. Appx. 55 (3d Cir. 2007).

Based on the above stated allegations of Plaintiff, we find, for present screening purposes, that he has not stated an Eighth Amendment cruel and unusual punishment claim against any Defendant.

Therefore, we will recommend that Warden Martinez, Acting Warden Ey, BOP Regional Director Dodrill, and BOP Administrator Watts be dismissed entirely as Defendants in this case. We will recommend that the Eighth Amendment cruel and unusual punishment claim against Defendant Kaminski be dismissed.

2.    *Defendant Kaminski*

As discussed above, Plaintiff names Kaminski as a Defendant because he alleges this Defendant forced him to participate in the IFRP and forced him to sign the IFRP contract, even though he did not have a criminal fine to pay and the sentencing court did not set a schedule of restitution payments.  Plaintiff also alleges that Defendant Kaminski improperly deducted money from his account and placed him in IFRP refusal status when his minimum account balance fell below the required $25.  Plaintiff further alleges that even after his original sentence was vacated on July 3, 2007, Defendant Kaminski still refused to remove the restrictions placed and refused to return the money to his account.  Plaintiff claims that the conduct of Defendant Kaminski deprived him of his liberty interest and caused him to suffer harassment and retaliation by Defendants, which he avers is cruel and unusual.  (Doc. 43, p. 3).[16]

As indicated above, Plaintiff is correct (Doc. 43, p. 4) that only the sentencing court has authority to set a schedule for restitution payments.  However, the BOP can set a schedule for an inmate's payment of his felony special assessment.  *See Cotogan, supra*.  Further, Plaintiff's own exhibits show that the court imposed a $500 felony assessment in his original J&C, and that is why Plaintiff was asked to sign the IFRP contract and make $25 quarterly payments.   There is no indication that Plaintiff had a restitution payment as part of his original sentence and that any BOP staff set a schedule for restitution payments.  Plaintiff also alleges that after his original sentence was vacated, Defendant Kaminski should have removed the

---

[16]As discussed above, we do not find that Plaintiff has stated a First Amendment retaliation claim against the supervisory Defendants.  Also, as discussed above, we do not find an Eighth Amendment cruel and unusual punishment claim is stated as against any Defendant.

restrictions placed on him and should have returned his money.  Plaintiff states that Defendant

Kaminski's failure to do so deprived him of the liberty interest he had in his prison privileges and

deprived him of his money.

We find no Fifth Amendment due process claim stated as against Defendant

Kaminski.

As the *O'Connell* Court stated:

> The Due Process Clause does not protect every change in
> the conditions of confinement having a substantial adverse impact on a
> prisoner.  *Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 49 L.Ed.2d
> 451 (1976).  The Due Process Clause shields from arbitrary or
> capricious deprivation only those facets of a convicted criminal's
> existence that qualify as "liberty interests."  *Hewitt v. Helms*, 459 U.S.
> 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983); *Morrissey v. Brewer*,
> 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).  The types of
> protected liberty interests are not unlimited.  The interest must rise to
> more than an abstract need or desire and must be based on more than a
> unilateral hope.  Rather, an individual claiming a protected interest
> must have a legitimate claim of entitlement to it.  *Greenholtz v. Inmates
> of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7, 99 S.Ct.
> 2100, 60 L.Ed.2d 668 (1979) (citation omitted).

> Thus, the threshold question presented by Plaintiff's claims is
> whether Defendants' actions impacted a constitutionally-protected
> interest.  A liberty interest may arise either from the Due Process
> Clause itself, or from a statute, rule, or regulation.  *Hewitt*, 459 U.S. at
> 466.  A liberty interest inherent in the Constitution arises when a
> prisoner has acquired a substantial, although conditional, freedom such
> that the loss of liberty entailed by its revocation is a serious deprivation
> requiring that the prisoner be accorded due process.  *Gagnan v.
> Scarpelli*, 411 U.S. 778, 781, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).

2008 WL 144199, * 14.

The *O'Connell* Court further stated:

> [I]n *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132
> L.Ed.2d 418 (1995) . . . the Supreme Court pronounced a new standard
> of determining whether prison conditions deprive a prisoner of
> a liberty interest that is protected by due process guarantees.
> Specifically, the Supreme Court held that prison conditions do not impact
> a protectable liberty interest unless they result in an *"atypical and
> significant hardship on the inmate in relation to the ordinary incidents of
> prison life."* *Sandin*, 515 U.S. at 483 (emphasis added).

*Id*. at * 15.

The change in Plaintiff's status to IFRP refuse and the imposition of restrictions on

him, such as his work assignment, his wage grade and his access to prison programs, are

ordinary incidents of prison confinement and do not implicate a liberty interest protected by the

Due Process Clause.   Further, we find that Plaintiff's signing the IFRP contract to pay the $500

special assessment the court imposed in his original sentence and his participation in the IFRP

program, even after his original sentence was vacated, are not  prison conditions  that result in

an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison

life." *Sandin*, 515 U.S. at 483.

In *Wilkins*, *supra*, at *16, this Court stated:

> First, it has been recognized that the [IFRP] program is constitutionally
> acceptable. *See Earle v. United States,* 2005 WL 2095691 *2 (E.D.Kent.
> Aug. 20, 2005)(the IFRP does not deprive inmates of their constitutional
> due process rights); *see also James v. Quinlan,* 866 F.2d 627, 630
> (3d Cir.1989). Second, the placement of Plaintiff[1] on IFRP refusal
> status for approximately two (2) months after he failed to make a
> scheduled payment was an appropriate response by correctional officials
> and does not rise to the level of a constitutional violation.
>
> Finally, the United States Supreme Court has held that inmates
> have "no legitimate statutory or constitutional entitlement" to any

> particular custodial classification even if a new classification would
> cause that inmate to suffer a "grievous loss." *Moody v. Daggett,*
> 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976);
> *James v. Reno,* 39 F.Supp.2d  37, 40 (D.D.C.1999) (citation omitted)
> (a federal inmate "has no liberty interest in his security classification).
> Consequently, Defendants are entitled to entry of summary judgment
> with respect to Plaintiff's claims regarding the IFRP and the alleged
> improper increase in his custody classification.

Thus, we find that our Plaintiff has not raised a constitutional violation with respect to his alleged forced participation in the IFRP by Defendant Kaminski, and by the deduction of money  from his prison account and his placement in IFRP refusal status.  Therefore, we do not find a Fifth Amendment due process claim asserted with respect to Defendant Kaminski's alleged conduct towards Plaintiff.

However, to the extent Plaintiff alleges that Defendant Kaminski failed to remove his IFRP refuse status, reinstate his privileges and return his money to his account after his original sentence was vacated, Plaintiff may have a claim against the Untied States for negligence under the Federal Tort Claims Act ("FTCA").  Thus, we will recommend that after Plaintiff exhausts his BOP administrative tort claim remedies, he be directed  to file a Complaint against the United States under the FTCA.[17]

---

[17]The provisions of the FTCA govern all claims against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the federal government while acting within the scope of his office or employment.  28 U.S.C. § 2675 (a).

In *Banks v. Roberts,* 2007 WL 3096585, * 2 (3d Cir.)(Non-Precedential), the Court stated:

> The FTCA waives the sovereign immunity of the United States
> for torts of federal employees acting within the scope of their
> employment" under circumstances where the United States, if a

## VII.  Recommendation.

Based on the above, it is respectfully recommended that this case be dismissed as

against all Defendants with respect to all of Plaintiff's constitutional claims asserted under

---

private person, would be liable to the claimant in accordance with
the law of the place where the act or omission occurred."  28 U.S.C.
§ 1346(b)(1).  The FTCA contains a jurisdictional bar that requires a
plaintiff to file his or her claim with the appropriate federal agency
and receive a final denial by that agency before filing a complaint
in federal court.  *See* 28 U.S.C. § 2675(a).

This Court cannot consider a negligence claim under *Bivens* since "negligence is not
the basis of a constitutional claim".  *Banks, supra*, *2, n. 4.  Also, the only proper party
Defendant is the United States in an FTCA action, and not the federal agency or its employees.
*See* 28 U.S.C. §2679 (b), (d)(1) and §2680(a).  Thus, neither the BOP nor an individual
employee of  the BOP  can be  included in Plaintiff's FTCA action, and only the United States
can be named as Defendant.  *See Banks*, 2007 WL 3096585, * 2.

Plaintiff Douglas must file his FTCA action within six (6) months after the agency, here
BOP, issues its final denial of his Administrative Tort Claim (Form SF-95).  *See* 28 U.S.C.
§ 2401(b); *Williams v. U.S.*, 1995 WL 739497, E.D. Pa.

§ 1331.  It is also recommend that after Plaintiff exhausts his BOP administrative tort claim

remedies, he be directed to file an amended complaint against the United States under the

FTCA.


<u>s/ Thomas M. Blewitt</u>
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: March 17, 2009**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

VERNON DOUGLAS, a/k/a Leverne  :   CIVIL ACTION NO. **1:CV-08-0140**
Douglas, a/k/a Spider,      :
           :
           :
     Plaintiff    :    (Judge Rambo)
           :
     v.      :    (Magistrate Judge Blewitt)
           :
UNITED STATES BUREAU OF PRISONS,  :
et al.,          :
           :
     Defendants   :

## NOTICE

   **NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **March 17, 2009.**

   Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

  Any party may object to a magistrate judge's proposed findings,
  recommendations or report addressing a motion or matter described in
  28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
  disposition of a prisoner case or a habeas corpus petition within ten (10)
  days after being served with a copy thereof.  Such party shall file
  with the clerk of court, and serve on the magistrate judge and all
  parties, written objections which shall specifically identify the
  portions of the proposed findings, recommendations or report to which
  objection is made and the basis for such objections.  The briefing
  requirements set forth in Local Rule 72.2 shall apply.  A judge shall
  make a *de novo* determination of those portions of the report or
  specified proposed findings or recommendations to which objection
  is made and may accept, reject, or modify, in whole or in part, the findings
  or recommendations made by the magistrate judge.  The judge, however,
  need conduct a new hearing only in his or her discretion or where
  required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


                                           **s/ Thomas M. Blewitt**

                                           **THOMAS M. BLEWITT**

                                           **United States Magistrate Judge**


**Dated: March 17, 2009**